## SAMUEL BLACK and Others *v.* GARRETT MOORE.

### IN ERROR.

One who has come into possession under a parol agreement with a disseisor to hold adverse possession till the title of the original owner should be barred by the statute of limitations, and receive a moiety of the land, is not protected by that statute, or the statute of frauds, against the original disseisor.

A plaintiff is a competent witness to prove that a deposition was taken at the time called for in the notice and rule.

ERROR to the District Court of Alleghany county.

Garrett Moore, the defendant in error and plaintiff below, brought an action of ejectment against Samuel Black, Reuben Rigley, Rebecca Moore, and Frederick Ramsey, the plaintiffs in error and defendants below, to recover the one half of a tract of two hundred and thirty-five acres of land situate in West Deer township, Alleghany county. The facts necessary to elucidate the points decided are the following:

It appeared in evidence that the title to this land had issued from the Commonwealth to William Van Phal, to whom a patent was given in 1786.

In 1809 or 1810, Garrett Moore, the plaintiff, took possession of the land, cleared from three to five acres, enclosed it together with several additional acres, on which he had girdled the timber, and raised grain on the cleared land for one or two years. After this, and before Garrett left the premises, his brother Joseph Moore entered, erected a cabin, moved into it with his family, and continued to reside on and improve the land until his death, which occurred in 1829. After his death, his heirs, and those claiming under them, continued to hold and cultivate the land until the time this suit was instituted, at which time the defendants were living on the tract.

The defendants contended that as Joseph Moore and those claiming under him were the real occupants of the land for more than twenty-one years, they alone are entitled to the whole tract.

The plaintiff founded his claim upon the fact that he made the first improvement upon the land, and upon an alleged parol contract or

lease made between himself and his brother Joseph Moore, by which said Joseph entered upon the land and agreed to reside thereon and hold the adverse possession for twenty-one years, unless disturbed or removed by the holder of the legal title, but if not disturbed and the title became perfected by the statute of limitations, then, to wit, at the end of twenty-one years from the entry by Garrett, the land was to be equally divided between them, share and share alike.

To prove this alleged parol agreement, the plaintiffs offered to read the deposition of John Anderson. This was objected to by defendant's counsel, because it did not appear that the deposition was taken between the hours named in the rule, nor in pursuance of it. The plaintiff, Garrett Moore, was then sworn on his voir dire, and stated, that he served the subpœna upon John Anderson, to bring him before the justice of the peace for the purpose of taking his deposition; that he served but one subpœna; that he was present when the deposition was taken by the justice, and that it was taken between five and six o'clock, P. M. of the day mentioned in the rule; that no person attended on the part of the defendants during the day on which the deposition was taken.

On this, the court annulled the objection and admitted the deposition to be read in evidence, which proved the contract as stated above. To this the defendants took exception, and a bill was sealed by the court.

The court charged the jury as follows:—"The first question for attention is that which arises under the statute of frauds and perjuries. The contract between Garrett and Joseph Moore being by parol,—is it therefore void by the statute of frauds and perjuries? The statute renders void every transfer by parol of any interest in land greater than a lease for three years, and would apply to such a claim as the plaintiff had to the land in question at the time of the alleged contract between him and Joseph. If the plaintiff is now claiming to recover upon that contract alone, without any other right or claim, then, unless he could show that the parol sale of the lease was accompanied by visible and exclusive possession under such sale, together with the payment of the consideration agreed upon, or the making of valuable improvements by the vendee, his case would come within the provisions of the statute. But Garrett did not purchase nor lease the land from Joseph, and therefore the application of the statute is not readily perceived.

"The parol contract is not the inception of Garrett's claim, nor does he present it for that purpose, but for the purpose of showing the terms on which Joseph entered and held, and for whose benefit the adverse title became perfected. Nor is Joseph claiming an equitable

right, nor demanding the specific performance of a parol contract. He is asking for a legal right, if any thing, and to be restored to that possession which he alleges he held before Joseph entered, and to that title which he asserts Joseph agreed to preserve and perfect for their joint benefit. The statute of frauds and perjuries, therefore, presents no obstacle to the plaintiff's recovery.

"2d. The next question presented by the defence is, what is the effect of the statute of limitations upon the plaintiff's claim? In order to give a title by the statute of limitations, there must have been a continuous, notorious, and adverse possession for twenty-one years. There must be no holding under the plaintiff. If the defendants have obtained possession of the plaintiff, or by his consent, they will not be protected by the statute, or if they acknowledge that they were holding the possession of the land for the owner or owners thereof, it cannot be deemed adverse, and consequently the statute will form no bar to a recovery of the land. Again, it is decided that the statute of limitations does not begin to run until there has been a right of action in the plaintiff against the person in possession, although he may have declared his possession to be adverse.

"That Joseph Moore and those holding under him had the possession of the land more than twenty-one years, there is no doubt. The only question is, was it an adverse possession? This is a question of fact for the jury to decide.

"But again, the contract (if it existed) stipulated that Garrett was to have the one half after or when the title of himself and Joseph was perfected by the statute of limitations against the owner of the legal title. This being the case, the statute as between Garrett and Joseph would not begin to run until twenty-one years after Garrett took adverse possession; for, by the terms of the agreement, Joseph was to retain possession until that time would elapse, and consequently Garrett had no right of action against Joseph, until, by the terms of the contract, he, Joseph, could claim the possession.

"Garrett's entry was in 1809 or 1810, and his right of action did not accrue till 1830 or '31; since that time, twenty-one years have not elapsed, and the statute of limitations would form no bar to the plaintiff's recovery."

To this charge, the counsel for both plaintiff and defendant excepted. The jury rendered a verdict in favour of the plaintiff for the undivided half of two third parts of the tract in dispute, with six cents damages and six cents costs, and for Samuel Black, as to the remaining third; whereupon the defendants removed the record to this court and assigned the following errors.

1. The court erred in admitting the deposition of John Anderson; it not appearing by the certificate of the justice, nor by any competent testimony, that it was taken within the hours named in the notice annexed to the rule.

2. The court erred in admitting the cross-examination of James McClelland, as to declarations of Garrett Moore, in regard to certain things not referred to, nor testified about in the examination in chief.

3. The court misled the jury, in charging them, that after Garrett Moore had cleared from two to five acres, and *before* he left the premises, his brother Joseph entered, &c., and that that fact (amongst others) was abundantly shown by the testimony, when, in fact, the evidence was, to say the least of it, doubtful, whether Garrett, when he discovered the tract did not belong to Dorsey before Joseph entered, had not abandoned his improvement, &c.

4. The court misled the jury in stating the testimony of plaintiff's principal witness, *Robert Thompson*, and in construing the same; the court saying, in reference to that testimony, that it was not till the end of twenty-one years, &c., that the property was to be divided between Garrett and Joseph, &c. &c.

5. The court erred in charging the jury " that the application of the statute of frauds to the present case could not readily be perceived; and that the statute of frauds and perjuries presented no obstacle to the plaintiff's recovery."

6. The court erred in entering judgment on the verdict as rendered.

7. The court erred in charging the jury " that the statute of limitations would form no bar to the plaintiff's recovery in this case."

*Black*, for plaintiff in error.

*Robb*, contrà, cited 7 Serg. & Rawle, 177; 3 Serg. & Rawle, 292.

*Burke*, in reply, cited 9 Watts, 107; 1 Watts & Serg. 557; 5 Watts, 146; 9 Watts, 106; 1 Watts & Serg. 554, and 1 Watts & Serg. 388.

The opinion of the court was delivered by GIBSON, C. J.

By no interpretation could the statute of frauds be brought to operate on the agreement between Garrett and Joseph Moore. That statute provides that all leases, interests of freehold or term for years, and any uncertain interest, created by livery of seisin or parol, shall have the effect of leases or estates at will, and no more. Now, Garrett Moore is demanding nothing from the heirs of Joseph or their alienee, which could have passed to him by the agreement. He had entered into possession of a patented tract of land, designing to gain the title to it by the statute of limitations. With that view he began

to clear and fence it, and, at the end of a year, introduced his brother Joseph into the possession with him, under the particular agreement that Joseph should hold the possession thus acquired adversely to the title of the patentee, and receive a moiety of the land for his pains. Garrett continued to exercise acts of ownership for a short time, but ultimately left Joseph in the exclusive occupancy. The agreement, therefore, purported to be, not a parol grant from Joseph to Garrett, but, if any thing, a parol grant from Garrett to Joseph: and if the question were, whether Joseph could enforce the agreement, it might possibly bear an argument. As the patentee suffered the statute to run its course, his title has been transferred by it to some one; and the question is, whether to Joseph, or to Garrett, or to both. Primâ facie it might seem to have been transferred to Joseph, who held for the greater part of the time necessary to complete the bar, but it was certainly open to Garrett to show that Joseph's possession was his possession, and, consequently, that the title gained by it was his title; and why should it not be shown by parol evidence of a verbal agreement? The statute of frauds operates on grants and contracts to convey, not on agreements which purport to pass neither interest nor -estate; nor on the evidence necessary to explain the occupancy of a tenant in possession. Undoubtedly two persons may gain a title by the statute of limitations by acting in concert, and relieving each other in the actual possession, each holding it in turn till the statute has closed. Now that is exactly this case; for Garrett had held for a year when Joseph came in by his permission. But the same result would have been produced by an exclusive occupancy on the part of either for the benefit of the other, or of both. It is not disputed that Garrett was in possession of the tract, when Joseph came into possession to hold it adversely, not to him, but to the patentee. Joseph's possession as a tenant, therefore, was Garrett's possession; and such a tenancy may be constituted without writing, even consistently with the statute of frauds, which allows to uncertain interests in land, created by parol, the effect of a tenancy at will, and that is sufficient, while it lasts, to prevent the possession of the tenant from being adverse to the title of the landlord. Now it is to be noted that the defendants claim to hold, by the statute of limitations, against Garrett as well as against the original patentee, and it was proper, therefore, for Garrett to show, by any evidence in his power, that Joseph's possession was not adverse to him, but under him. In Jones v. Porter, 3 Penna. Rep. 134, it was ruled by this court that a defendant who had come into possession by the plaintiff's consent, should not be protected by the statute, and that whether he had so come in, was a question of fact for the jury. But a man may hold

as well by an agent as a tenant; for such an agent is essentially a tenant at will, and the agency may be shown by parol evidence.    In Reed *v.* Dickie, 2 Watts, 459, it was held that an actual settlement may be completed by another with the consent of him who commenced it.    It was, indeed, decided in McLaughlin *v.* Maybury, 4 Yeates, 534, that a man cannot be a settler at the same time on two tracts, but the decision seems to have been governed by public policy to prevent monopoly, which, at one time, extensively prevailed, by the device of using fictitious names.    But the doctrine of improvement, for any thing but analogy, has little to do with the question.    Garrett Moore entered, not as an improver, but as a disseisor, and he introduced Joseph, to continue his disseisin for their joint benefit.    It seems, therefore, that Joseph's possession was not hostile to him, and that, being his possession, the title gained by it is his title, subject only to his agreement to give Joseph a moiety of the land.

Anderson's deposition was properly received.    To say nothing of the presumption that a rule for depositions has been faithfully executed, a party to the suit is a competent witness to the court, though not to the jury.    He may prove the identity of his day-book to make way for entries in it, the service of a notice or a subpœna, or the loss of a paper, and why not the time when a deposition was taken?    There are other exceptions which are evidently unfounded, or not subjects of error, and it is therefore deemed unnecessary to enter into a particular discussion of them.                      Judgment affirmed.